# IN THE SUPREME COURT OF TEXAS

════════════
No. 15-0197
════════════

UDR TEXAS PROPERTIES, L.P. D/B/A THE GALLERY APARTMENTS,
UNITED DOMINION REALTY TRUST, INC., ASR OF DELAWARE, L.L.C.,
AND UDR WESTERN RESIDENTIAL, INC., PETITIONERS

v.

ALAN PETRIE, RESPONDENT

════════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
════════════════════════════════════════════════════════════

**Argued September 15, 2016**

JUSTICE BROWN delivered the opinion of the Court.

JUSTICE WILLETT filed a concurring opinion, in which JUSTICE BOYD joined.

Alan Petrie sued The Gallery apartment complex and its owners (collectively, "Gallery") after he was assaulted and robbed in the complex's visitor parking lot. The trial court concluded Gallery owed no duty to Petrie to protect him but the court of appeals reversed, holding there was evidence Gallery knew or should have known of a foreseeable and unreasonable risk of harm. We reverse the court of appeals because it failed to properly consider whether the risk of harm was unreasonable; we render judgment for Gallery because Petrie offered no evidence of the burden that preventing such a crime would impose on Gallery.

# I

Alan Petrie arrived at The Gallery at about two o'clock one morning to attend a party hosted by a co-worker. He parked in a visitor lot at the front of the complex. Although the complex was gated, the visitor parking lot, which spanned most of the property's street frontage, was outside the gate and accessible to the public. While Petrie made a phone call from his car, a vehicle pulled up behind his, blocking him in. Two men exited the vehicle and approached Petrie's car. One pointed a shotgun at Petrie through his window and ordered him to exit the car. Petrie complied and, when requested, surrendered his wallet and keys. But when ordered to lie down, he hesitated. So one of the men shot him in the knee and he fell to the ground. The shooter then placed the shotgun barrel to Petrie's head and pulled the trigger, but the weapon did not fire. Petrie quickly crawled under the vehicle next to him while the assailants fled.

Petrie sued Gallery, alleging it knew or should have known about the high crime rate on its premises and in the surrounding area yet failed to use ordinary care to make the complex safe. Both sides presented expert witnesses at a two-day evidentiary hearing. The experts' testimony focused mainly on whether the crime against Petrie was foreseeable. The trial court concluded Gallery owed no duty to Petrie and signed a take-nothing judgment in its favor.

The court of appeals reversed, holding that "there is evidence of the foreseeability of an unreasonable risk of harm that a person on the premises would be the victim of violent criminal conduct." No. 14-13-00123-CV, 2014 WL 7174242, at *9 (Tex. App.—Houston [14th Dist.] Dec. 9, 2014) (mem. op.). The court of appeals based its conclusion exclusively on its analysis of the evidence against the factors we laid out in *Timberwalk Apartments, Partners, Inc. v. Cain*, 972

2

S.W.2d 749 (Tex. 1998). Gallery urged the court of appeals to affirm the trial court's judgment because Petrie failed to separately brief whether the risk of harm was unreasonable. In response, the court of appeals held that "[t]he potential unreasonableness and foreseeability of harm is considered as a whole, not as separate elements requiring independent proof." 2014 WL 7174242, at *3 (internal quotations omitted). The court of appeals added that "whether the risk of criminal conduct is both unreasonable and foreseeable is determined by assessing the five *Timberwalk* factors." *Id.* at n.2.

Gallery sought our review, arguing that the court of appeals never truly considered whether there was an unreasonable risk of harm because the *Timberwalk* factors apply only to foreseeability. Gallery further urges us to render judgment in its favor because Petrie failed to argue or offer any evidence on unreasonableness. We granted review.

## II

Generally, property owners have no legal duty to protect persons from third-party criminal acts. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). But a property owner who "controls the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997).[1]

---

[1] There is no dispute here that Gallery retained control over its apartment complex or that Petrie was an invitee.

We have consistently said that a risk must be both foreseeable *and* unreasonable to impose a duty on a property owner.[2] This approach is not peculiar to premises-liability cases; it is essential to the determination of duty in all of tort law. *See, e.g.*, *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (in determining existence of a duty in common-law negligence cases, "the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant"). Foreseeability is a "prerequisite to imposing a duty." *Timberwalk*, 972 S.W.2d at 756. But once foreseeability is established, "the parameters of the duty must still be determined." *Id.* Courts will also consider "the social utility of the actor's conduct, the consequences of imposing the burden on the actor, and any other relevant competing individual and social interests implicated by the facts of the case." *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002). These considerations take into account not just the "reasonable foreseeability of harm to the person injured" but also "public policy considerations." *Id.* at 34. We acknowledge that "foreseeability has received the lion's share of the attention" from Texas courts considering a property owner's duty to protect invitees from third-party criminal acts. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 791 (Tex. 2010)

---

[2] *See Timberwalk*, 972 S.W.2d at 756 ("The foreseeability of an unreasonable risk of criminal conduct is a prerequisite to imposing a duty . . . ."); *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999) ("[P]roperty owners owe a duty to those who may be harmed by the criminal acts [of third parties] only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable."); *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008) (A property owner "who controls the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm."); *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010) ("[A] property owner owes invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known.").

(Wainwright, J., dissenting). Nonetheless, "[f]oreseeability is the beginning, not the end, of the analysis in determining the extent of the duty to protect against criminal acts of third parties." *Timberwalk*, 972 S.W.2d at 756 (quoting *Lefmark*, 946 S.W.2d at 59) (Owen, J., concurring).

The court of appeals acknowledged that unreasonableness plays a role in the duty inquiry but concluded that an evaluation of the factors we laid out in *Timberwalk* is dispositive of whether the risk of criminal conduct is both foreseeable *and* unreasonable. *See* 2014 WL 7174242, at *3 n.2. We disagree. This Court conceived the *Timberwalk* factors as a means to aid courts in determining foreseeability specifically. *See Timberwalk*, 972 S.W.2d at 757 ("In determining whether the occurrence of certain criminal conduct on a landowner's property should have been foreseen, courts should consider whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about them."). Our explanation of each factor focused doggedly on foreseeability. First, proximity: "For a landowner to foresee criminal conduct on property, there must be evidence that other crimes have occurred on the property or in its immediate vicinity." *Id*. Second, recency and frequency: "Foreseeability also depends on how recently and how often criminal conduct has occurred in the past." *Id.* at 757–58. Third, similarity: "The previous crimes must be sufficiently similar to the crime in question as to place the landowner on notice of the specific danger." *Id.* at 758. And fourth, publicity: "The publicity surrounding the previous crimes helps determine whether a landowner knew or should have known of a foreseeable danger." *Id*. "These factors—proximity,

recency, frequency, similarity, and publicity—must be considered together in determining whether criminal conduct was foreseeable." *Id.* at 759.

Moreover, when we first applied these factors in *Timberwalk*, we concluded only that "the risk that a tenant would be sexually assaulted was in no way foreseeable." *Id.* Because the lack of foreseeability was dispositive in that case, further consideration of the unreasonableness of the risk was unnecessary. Similarly, in *Mellon Mortgage Co. v. Holder*, we recited the standard that risk of a crime must be "*both* unreasonable and foreseeable" while signaling that "[w]e focus our attention in this case on 'foreseeability.'" 5 S.W.3d 654, 655 (Tex. 1999) (emphasis added). Again, we did not further discuss unreasonableness because it was unnecessary after concluding the criminal act was unforeseeable. *See id.* at 658.

Although we have yet to dispose of a post-*Timberwalk* case on unreasonableness grounds, the distinctiveness of the foreseeability and unreasonableness inquiries has been on full display. In *Trammell Crow Central Texas, Ltd. v. Gutierrez*, for instance, the Court unanimously agreed the owners of a 60-acre shopping mall owed no duty to the victim of a parking-lot shooting. 267 S.W.3d 9, 9 (Tex. 2008). But the Court split on whether that conclusion rested on unforeseeability or the unreasonableness of the risk. The majority applied the *Timberwalk* factors and concluded the crime was unforeseeable. *See id.* at 13–17. But four concurring justices would have concluded "not that the attack was unforeseeable, but that the risk of its occurrence was not unreasonable, and that the consequences of requiring premises owners to prevent this type of crime would require a measure of deterrence that is neither feasible nor desirable." *See id.* at 18 (Jefferson, C.J., concurring).

Similarly, a dissenting justice broke from the *Del Lago* majority to argue that the risk was not unreasonable even if foreseeable. *See* 307 S.W.3d at 791–95 (Wainwright, J., dissenting). Notably, the *Del Lago* majority did not dispute the distinctiveness of the unreasonableness inquiry; rather, it simply disagreed with the dissent on the unreasonableness of the risk. *See id.* at 770 ("[The dissent] correctly notes that a property owner's duty to invitees extends only to reduce or eliminate an unreasonable risk of harm created by a premises condition. Under the circumstances of this case, we think [the plaintiff] faced an unreasonable risk of harm.").

We designed the *Timberwalk* factors to measure foreseeability; their application cannot, without more, determine the reasonableness of a risk of harm. *See Trammel Crow*, 267 S.W.3d at 18 (Jefferson, C.J., concurring) ("[F]ocusing solely on foreseeability overlooks other factors we have held are pertinent to the existence and scope of a duty."). Unreasonableness "turns on the risk and likelihood of injury to the plaintiff . . . as well as the magnitude and consequences of placing a duty on the defendant." *Del Lago*, 307 S.W.3d at 770 (citing *Phillips*, 801 S.W.2d at 525). A risk is unreasonable when the risk of a foreseeable crime outweighs the burden placed on property owners—and society at large—to prevent the risk. None of the *Timberwalk* factors compels any consideration of what burdens a property owner would necessarily incur to prevent or reduce the risk of a crime. Likewise, the factors do not address whether, as a matter of public policy, it is preferable to impose such burdens or, instead, accept the risk that a crime will occur.

The unreasonableness inquiry, on the other hand, explores the policy implications of imposing a legal duty to protect against foreseeable criminal conduct. This includes whether a duty would "require 'conspicuous security' at every point of potential contact between a patron and a

7

criminal" or require adoption of "extraordinary measures to prevent a similar occurrence in the future." *Trammel Crow*, 267 S.W.3d at 18 (Jefferson, C.J., concurring). Accordingly, "if a premises owner could easily prevent a certain type of harm, it may be unreasonable for the premises owner not to exercise ordinary care to address the risk." *Del Lago*, 307 S.W.3d at 792. But "if the burden of preventing the harm is unacceptably high, the risk of the harm is not unreasonable." *Id.* As Chief Justice Jefferson observed:

> The question is the extent to which we should require premises owners—even those who have experienced crime in the past—to provide the same level of security that airports enlist to prevent terrorism. Life in a free society carries a degree of risk. That risk can be virtually eliminated by a pervasive military presence, but the burdens—both in terms of the economic cost to premises owners and in the oppressive climate a police state spawns—would be prohibitive.

*Trammel Crow*, 267 S.W.3d at 19 (Jefferson, C.J., concurring).

The court of appeals erred in its conclusion that "'unreasonableness and foreseeability of harm' is considered as a whole, not as separate elements requiring independent proof." 2014 WL 7174242, at *3. We have acknowledged that foreseeability and unreasonableness are not wholly independent; rather, "[t]he unreasonableness of a risk cannot be completely separated from its foreseeability." *Del Lago*, 307 S.W.3d at 770. But while the *Timberwalk* factors were designed to elicit evidence defining the risk posed by foreseeable criminal activity, they do not contemplate weighing that risk "against the consequences of placing [a] burden on the defendant," and on society, to reduce or eliminate that risk. *Del Lago*, 307 S.W.3d at 791 (Wainwright, J., dissenting). The court of appeals never truly considered the unreasonableness of any foreseeable risk to Petrie. And so the court erred in concluding as a matter of law that Gallery owed a legal duty of care to Petrie.

8

Gallery argues we should render judgment in its favor because Petrie offered no evidence of, and did not argue that he faced, an unreasonable risk of harm. We agree he never offered any such evidence and is without excuse for not doing so. Although we have not disposed of a post-*Timberwalk* case on unreasonableness grounds, our precedents are unambiguous: the foreseeability and unreasonableness inquiries are distinct. Moreover, Petrie has been on notice at every stage of this case that he must argue and offer evidence of unreasonableness. On multiple occasions, Gallery argued to the trial court that it must conclude the crime against Petrie was both foreseeable *and* the risk unreasonable. But Petrie exclusively relied on his expert witness's foreseeability evaluation. He offered no evidence concerning the burden on Gallery to make the property safe from foreseeable crime and whether that burden was reasonable.

In its final judgment, the trial court simply stated that "[d]efendants owed no duty to protect [Petrie] from the criminal acts of third persons." It did not explain whether it based that determination on foreseeability or unreasonableness or both. At the court of appeals, Gallery argued that by failing to address unreasonableness, Petrie failed to challenge a potential independent basis for the trial court's ruling. We agree. Petrie's briefing to the court of appeals, arguing that "the aggravated robbery was imminently foreseeable, and a duty on the part of [Gallery] was accordingly established," shows he saw foreseeability as his only challenge.[3]

---

[3] Although Petrie did raise a new argument in his briefing to the court of appeals about poor lighting in Gallery's parking lot, he presented it in the course of arguing that the crime against Petrie was foreseeable. Petrie never specifically asserted that better lighting could have prevented the crime and what the burden on Gallery would have been to improve its lighting. Moreover, Petrie offered no evidence on lighting at the trial court's evidentiary hearing and the court of appeals made no mention of it in its opinion.

To this Court, Gallery repeats its argument that Petrie's failure to address unreasonableness leaves unchallenged an independent basis for the trial court's judgment. Petrie responds that the court of appeals properly analyzed foreseeability and unreasonableness together in its *Timberwalk* analysis. He further argues that Gallery's awareness of crime on its premises together with "its failure to take protective action other than posting signs in the front parking lot warning that violators would be towed, demonstrate that the magnitude and consequences of imposing a duty do not outweigh the need for prevention." But we disagree. At most, this amounts to more evidence that the crime against Petrie was foreseeable and potentially establishes that the risk of harm was high. It says nothing about the burden the law should impose on Gallery to militate against that risk and whether the risk is still unreasonable in light of that burden. Petrie's briefing includes neither any suggestion of measures Gallery should take nor what cost could be justifiably imposed.

Petrie's counsel was asked at oral argument what evidence in the record shows the burden Gallery should bear to prevent crimes like this one. He responded that Gallery could have (1) improved the lighting in the visitor parking lot; (2) assigned courtesy officers living at the complex to patrol the parking lot from 10 p.m. to 2 a.m. on Friday and Saturday nights; (3) hired off-duty police officers to monitor the lot; and (4) trimmed back a row of hedges that run between the visitor parking lot and the sidewalk. Of these, only the better-lighting proposal is supported by any evidence in the record. Petrie retained a lighting expert whose report appears in the record. But Petrie failed to present either the report or the expert at the trial court's evidentiary hearing. And at no point before oral argument to this Court did Petrie propose utilizing on-premises courtesy officers, off-duty police officers, or trimming back hedges to prevent crime. When asked if there was evidence in the

record on what it would cost Gallery to implement a police presence in its parking lot, Petrie's counsel conceded there is none.

Based on Gallery's arguments in both courts below and before this Court and the standard set forth by our precedents, Petrie was at least on notice that in addition to establishing foreseeability he might be required to put on evidence and argue that he faced an unreasonable risk of harm. He chose to stand on the position that the *Timberwalk* factors were dispositive of both foreseeability and unreasonableness, and further chose not to offer any evidence on Gallery's burden to prevent or reduce the risk from violent crime. Because he presented no evidence and made no argument on an essential element in the determination of whether a legal duty exists, judgment should be rendered in Gallery's favor.

* * *

We reverse the court of appeals because it failed to properly consider whether the risk of harm was unreasonable. We render judgment in Gallery's favor because Petrie failed to offer evidence of the burden that would be imposed on Gallery to prevent or reduce the risk from a crime like this one.

Jeffrey V. Brown
Justice

OPINION DELIVERED: January 27, 2017

11