**AFFIRMED and Opinion Filed October 24, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00880-CV

**PENG WANG, CHONG ZHANG AND MENGQI (NINA) LIU, Appellants**
**V.**
**TREA CHURCHILL ON THE PARK, LLC, PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, AND AMERICAN MANAGEMENT SERVICES CENTRAL, LLC, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-02223**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Garcia

This is an appeal from the trial court's grant of a traditional and no evidence summary judgment in favor of the owner and property manager on Peng Wang, Chong Zhang, and Mengoi Liu's (collectively, "Appellants") premises liability claim. In three issues, Appellants argue: (i) the summary judgment was in error because appellees had a duty to use reasonable care to reduce the foreseeable and unreasonable risk of injury; (ii) appellees did not use reasonable care to reduce the foreseeable and unreasonable risk of injury; and (iii) there is evidence that appellants' failure to use reasonable care to protect against the risk of injury from

criminal acts of third persons proximately caused the murder and assault that forms the basis for their suit.

We conclude the trial court's summary judgment was not erroneous because the evidence established there was no duty as a matter of law. Accordingly, we affirm the trial court's judgment.

## Background

On September 21, 2018, Jeremy Meeks, described as a "homeless and mentally disturbed individual," scaled the six-foot fence surrounding the Churchill on the Park apartment complex in Dallas (the "Apartments"). Wang was out walking her cat. Meeks trailed her to her apartment and stabbed her to death. He then attacked Wang's roommate Liu.

Wang's parents and Liu initiated this suit against TREA Churchill on the Park, LLC, the owner of the Apartments, and the property managers, Pinnacle Property Management Services, LLC and American Management Services, LLC (collectively, Appellees). The suit alleged that Appellees had a duty to prevent the attacks and the apartment security measures were inadequate.

Appellees moved for traditional and no-evidence summary judgment on Appellants' premises liability claims, arguing there was no legal duty to protect Appellants from the violent third-party criminal acts and that Appellants had no evidence to support their premises liability claims. Appellees' motion was supported by the declaration of Bruce Jacobs (the "Jacobs declaration"), a tenured professor of

criminology with over twenty-five years' experience. Appellants' response included the declaration of former Dallas Police Chief William Rathburn (the "Rathburn declaration").

The trial court conducted a hearing, granted the motion, and entered a take-nothing judgment against Appellants on their claims. Appellants now appeal from that judgment.

## Summary Judgment

Appellants argue that the trial court's summary judgment was in error. In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

Rule 166a(i) provides that after an adequate time for discovery, a party "may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the

burden of proof at trial." TEX. R. CIV. P. 166a(i). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See id.* at 762. When analyzing a no-evidence summary judgment, "we 'examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.'" *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller*, 168 S.W.3d at 823). A no-evidence summary judgment is improperly granted if the nonmovant presented more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

"A fact issue is raised by circumstantial evidence if a reasonable person would conclude from the evidence that the existence of the fact is more reasonable than its nonexistence." *Guthrie v. Suiter*, 934 S.W.2d 820, 831 (Tex. App.—Houston

[1st Dist.] 1996, no writ). "All that is required is that the circumstances point to ultimate facts sought to be established with such a degree of certainty as to make the conclusion reasonably probable." *Id.* "No fact issue is raised where the evidence is so indefinite and uncertain as to preclude a finding." *Id*. at 831–32.

### Premises Liability

The elements of a premises liability claim are (1) actual or constructive knowledge of some condition on the premises, (2) an unreasonable risk of harm posed by the condition, (3) failure to exercise reasonable care to reduce or eliminate the risk, and (4) injuries proximately caused by the failure to use reasonable care. *See Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (per curium).

Appellants' arguments are premised on the foreseeability of the criminal conduct; specifically, the violent assault and murder. Texas cases discussing the foreseeability of intervening criminal conduct do so primarily in the context of the element of duty. *See, e.g., Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) (holding no legal duty exists to prevent unforeseeable criminal acts); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996) (holding that duty to protect from criminal acts "does not arise in the absence of a foreseeable risk of harm."). Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008).

The existence of duty is a question of law for a court to decide from the facts surrounding the occurrence in question. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). In determining the scope of a defendant's duty, we consider the foreseeability of injury weighed against the magnitude of the burden of guarding against the injury and the consequences of placing the burden on the defendant. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983).

Generally, a landlord has no duty to tenants or their invitees for dangerous conditions on the leased premises. *Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996); *Caldwell v. Curioni*, 125 S.W.3d 784, 790 (Tex. App.—Dallas 2004, pet. denied). And as a general rule, "a person has no legal duty to protect another from the criminal acts of a third person." *Timberwalk*, 972 S.W.2d at 756. The exception to this rule is that one who controls the premises has "a duty to use ordinary care to protect invitees from criminal acts of third parties if [the possessor] knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Timberwalk*, 972 S.W.2d at 757 (internal quotation and citation removed). The exception only applies if the risk of criminal conduct is unreasonable and foreseeable. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999).

Foreseeability is established through evidence of "specific previous crimes on or near the premises." *Timberwalk*, 972 S.W.2d at 756. Moreover, these crimes must be sufficiently similar to the crime in question as to place the landowner on notice of the specific danger. *Id.* at 758. Factors we consider when determining whether

third party criminal conduct was foreseeable include: (1) proximity—whether any criminal conduct previously occurred on or near the property; (2) recency—how recently such conduct occurred; (3) frequency—how often such conduct occurred; (4) similarity—how similar the prior conduct was to the conduct that occurred on the property; and (5) publicity—whether any publicity surrounded the occurrences to indicate that the property owner knew or should have known about them. *Id.* at 757. These factors must be considered together "in light of what the premises owner knew or should have known before the criminal act occurred," and we must weigh the evidence using all factors. *Id*. at 12.

The summary judgment evidence establishes that in the two years prior to the incident, there were no violent crimes at the Apartments. Specifically, there were no sexual assaults, robberies, aggravated assaults, or homicides. There were five burglaries involving homeless individuals breaking into vacant units to sleep, theft of furniture and art from a model unit, maintenance equipment stolen from the shop, and attempted car burglaries. None of these instances escalated into a violent crime.

According to the Jacobs declaration, data concerning reported violent crimes within a one-mile radius of the Apartments shows there was not a single predatory (stranger–on–stranger) violent crime at any house, condominium, or other residential address in the two years preceding the incident.[1]

---

[1] Although Rathburn identifies violent crimes occurring in proximity to the Apartments, he does not directly controvert this statement in the Jacobs declaration.

Nonetheless, the Rathburn declaration opines that "it was foreseeable that there was an unreasonable risk of harm from criminal conduct," and appellees "had a duty to take reasonable action to protect [appellants]." Expert testimony, however, is "insufficient to create a duty where none exists at law." *Park v. Exxon Mobil Corp*., 429 S.W.3d 142, 150 (Tex. App.—Dallas 2014, pet. denied) (citing *Boren v. Texoma Med. Ctr., Inc*., 258 S.W.3d 224, 229 (Tex. App.—Dallas 2008, no pet.).

Rathburn does not dispute that there were no violent crimes at the Apartments during the two years prior to the incident. Instead, he analyzes crime statistics for crimes occurring with a one mile, one half mile, and one quarter mile radius of the Apartments for the 994-day period prior to the incident. He first includes all crimes in his count, including vandalism, prostitution, and narcotics violations. But he provides no basis to conclude that all of these crimes are pertinent to the analysis.[2] *See, e.g., Sanders v. Herold*, 217 S.W.3d 11, 17 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (noting that foreseeability is often determined by whether the defendant is aware of prior similar behavior). Although prior crimes need not be identical to establish foreseeability, the previous crimes must be sufficiently similar to the crime in question to place the party who owns or controls the premises on notice of the specific danger. *See Trammel Crow Central Tex., Ltd. v. Gutierrez*, 267

---

[2] Rathburn identifies 2207 total crimes within a one-mile radius, 789 crimes within a half-mile radius, and 198 crimes within a quarter-mile radius.

S.W.3d 9, 16 (Tex. 2008). The entirety of all possible types of crimes occurring outside the premises does not inform the foreseeability determination here.

Rathburn also divides the crimes into a category labeled "Violent Crimes and Residential burglaries." According to Rathburn, "it is reasonable to consider all property crimes in the foreseeability analysis because of the known relationship between property crime and violent crime." But Rathburn provides no basis for his conclusion that there is a "known relationship," and importantly, no rationale for concluding that the burglaries are similar to the crimes at issue here. *See Trammel Crow*, 267 S.W.3d at 16. In fact, there is no detail concerning the burglaries or whether they escalated into a violent crime. On the other hand, Jacobs opined that, per multiple data bases within the scientific field of Criminology, "[p]roperty crimes such as burglary, larceny, and motor vehicle theft do not empirically forecast violent crime."

Excluding the burglaries, Rathburn identifies five murders, fifteen sexual assaults, seventy-six robberies, and forty-nine aggravated assaults occurring with a one-mile radius. One murder, sixteen robberies, and seven aggravated assaults occurred with a half mile radius, and there were two robberies within a quarter mile radius. There is no detail concerning these crimes, or comparison to the crimes at issue. There is no information about whether the crimes were predatory and whether they occurred at a home, business, or elsewhere. *See Tex. Real Estate Holdings, Inc. v. Quach,* 95 S.W.3d 395, 399–400 (Tex. App.—Houston [1st Dist.] 2002, pet.

denied) (carjacking incident in which plaintiff was shot not foreseeable when there were no stranger-initiated crimes in the two years prior to the incident). The *Timberwalk* analysis, however, is a fact-dependent inquiry that looks to more than raw numbers and statistics. *Trammel Crow*, 267 S.W.3d at 17. The raw numbers and statistics Rathburn provided have insufficient detail to facilitate meaningful comparison to the crimes at issue here. The imposition of a duty demands something more. *See Timberwalk*, 972 S.W.2d at 758 (crimes must be sufficiently similar).

Moreover, Rathburn provides no evidence regarding the publicity for any of these crimes. The publicity surrounding previous crimes helps determine whether a landowner knew or should have known of a foreseeable danger. *Timberwalk*, 972 S.W.2d at 758. Nothing in the record demonstrates that appellees knew or would have reason to know about any of the crimes that occurred off the property.

Rathburn also opines that the Apartments' proximity to a psychiatric hospital is significant.[3] But there is no nexus between this proximity and the crimes he discusses, nor is there any indication that the crimes he identifies originated at the hospital or were committed by an individual receiving treatment there.

The Rathburn declaration also includes a section listing what he terms "Similar and Recent Crimes," that he opines are similar to the incidents here. He declares that "all 39 of these prior incidents and especially the crimes involving a

---

[3] The proximity is defined only as "close."

knife and the crimes within the complex, put the [appellees] on notice that there was an unreasonable risk of harm to invitees." There are thirty-nine crimes identified. But these crimes include several incidents of prying open a door, kicking a front door, forced entry, and taking property from an apartment.[4] Although Meeks' crime began with a forced entry, it was a violent crime. There is nothing to indicate that the forced entries Rathburn identifies escalated into a violent crime, were predatory, or even occurred while anyone was present. Likewise, the crimes occurring on the property were property crimes, not violent crimes. In short, there is no explanation as to how a pried open front door or other property crimes put appellees on notice of a risk for the violent crimes occurring here. *See, e.g., Walker*, 924 S.W.2d at 377–78 (stabbing of guest at apartment complex not foreseeable from four prior incidents of vandalism and theft of a refrigerator from a vacant apartment). Without context, there is no basis to conclude that any of these crimes are of the same character as the violent assault and murder occurring here. *See Mourer v. 8539, Inc.*, No. 01-09-0079-CV, 2010 WL 546410, at *5 (Tex. App.—Houston [1st Dist.] Dec. 30, 2010, no pet.) (mem. op.) (entry and misdemeanor theft not sufficiently similar to aggravated robbery to establish foreseeability).

Of the thirty-nine crimes listed, six included a knife, and two of the six were actual stabbings. None of these incidents occurred at the Apartments, and nothing

---

[4] Other crimes that are listed provide insufficient detail to determine the nature of the crime, such as "gun/axe," "Res Garage," and "pointed gun at comp."

establishes that Appellees were aware of the incidents. *See Timberwalk*, 972 S.W.2d at 758. Even if we were to assume that incidents involving knives, without more detail, are sufficiently similar to the incidents here to consider, six incidents occurring in the surrounding area within two years is too infrequent to establish foreseeability. *See Perez v. DNT Global Star, L.L.C.,* 339 S.W.3d 692, 704–05 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (twenty-three violent crimes, including five on or adjacent to premises too infrequent to establish foreseeability); *see also Trammell Crow*, 267 S.W.3d at 17 (ten violent crimes in twenty-three months at subject property too infrequent). This is particularly true when the crimes did not occur on the premises and there is no evidence that appellees knew or should have known the crimes occurred.

Appellants cite *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 764 (Tex. 2010) in support of their argument that appellees had or should have had specific knowledge of conditions making the crimes foreseeable. This reliance on *Del Lago* is misplaced.

In *Del Lago*, the court concluded that Del Lago had a duty to protect its patrons because it "had actual and direct knowledge that a violent brawl was imminent between drunk, belligerent patrons, and had ample time and means to defuse the situation." *Id*. at 769. The court concluded that "the duty arose not because of prior similar conduct but because it was aware of an unreasonable risk of harm at the bar that very night." *Id*.

Appellants suggest this case aligns with *Del Lago* because during the five months prior to the incident there were three instances of homeless persons staying in a vacant apartment, three non-violent burglaries, three responses to calls about loitering at the pool, and a call concerning a possible attempt to burglarize vehicles. Appellants further argue that "mentally unstable people were coming on the property."

Other than Meeks, however, there is no evidence that mentally unstable persons were "coming on the property." Moreover, nothing establishes how long Meeks was on the property or whether Appellees knew he was there. And none of the calls about criminal activity occurred on the night in question. The *Del Lago* court held that "criminal misconduct is sometimes foreseeable because of immediately preceding conduct." *Id*. at 762. There is no such conduct here.

In addition, the harm caused to the plaintiff in *Del Lago* was a natural and predictable progression from the conduct that preceded it. In other words, the brawl that occurred outside the bar causing plaintiff's injury had the same character, albeit with greater severity, as the foretelling verbal and physical confrontations that occurred earlier in the bar.

Finally, the *Del Lago* court noted that "the nature or character of the premises can be a factor that makes criminal activity more foreseeable," and "intoxication is often associated with aggressive behavior." *Id*. at 768. It is axiomatic that the

character of a residential dwelling is unlike the character of a bar, and there was no precipitating factor such as intoxication here.

Considering all the *Timberwalk* factors together, we conclude as a matter of law that the risk of injury from violent crime on the premises in question was not foreseeable based on evidence of prior crimes. *See Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 148 (Tex. App.—Dallas 2014, pet. denied); *see also QuikTrip Corp.* v. Goodwin, 449 S.W.3d 665, 674 n.18 (Tex. App.—Fort Worth 2014, pet. denied) (concluding "as a matter of law" that crime in question was not foreseeable, despite jury's finding of premises liability, because foreseeability is question of law for court when parties "do not identify disputed, material facts" that would impact determination of foreseeability, but rather "disagree about the legal significance of undisputed facts").

The record reflects that Appellees took measures to protect its tenants from crime. These measures include uniformed security officers patrolling twice a day and three times at night, and a Dallas Police Department courtesy officer residing on the property. A six-foot fence with access gates surrounds the property and there is a video surveillance system.

Rathburn opines that Appellees failed "to provide a reasonable level of security," and identifies several areas where he believes security could have been improved. According to Rathburn, none of these improvements "would have been overly costly for luxury apartments . . . ." This evidence goes to the reasonableness

prong of the duty inquiry. *See UDR Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98, 101 (Tex. 2017) (a risk of harm must be "both foreseeable and unreasonable" before a duty is imposed on a property owner). *Id.*

Unreasonableness turns on the risk and likelihood of injury, as well as the magnitude and consequences of imposing a duty on the premises owner or controller. *Id*. at 102. "A risk is unreasonable when the risk of a foreseeable crime outweighs the burdens placed on property owners—and society at large—to prevent the risk." *Id*. at 103. The unreasonableness inquiry "explores the policy implications of imposing a legal duty to protect against foreseeable criminal conduct," and includes whether a duty would require "conspicuous security at every point of contact . . . or require adoption of extraordinary measures to prevent a similar occurrence in the future." *Id*. at 103 (*citing Trammell Crow*, 268 S.W.3d at 18 (Jefferson, C.J., concurring)). But we have concluded that the violent criminal acts in this case were not foreseeable. Accordingly, we need not consider "unreasonableness." *See id*. at 102 (citing *Mellon*, 5 S.W.3d at 655); *see also, Timberwalk*, 972 S.W.2d at 759 (lack of foreseeability was dispositive).

We resolve appellants' first issue against them and need not consider their remaining issues. *See* TEX. R. APP. P. 47.1. The trial court's judgment is affirmed.

/Dennise Garcia/
<hr>
DENNISE GARCIA
JUSTICE

210880F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PENG WANG, CHONG ZHANG AND MENGQI (NINA) LIU, Appellants

No. 05-21-00880-CV          V.

TREA CHURCHILL ON THE PARK, LLC, PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, AND AMERICAN MANAGEMENT SERVICES CENTRAL, LLC, Appellees

On Appeal from the 192nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-20-02223. Opinion delivered by Justice Garcia. Justices Myers and Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TREA CHURCHILL ON THE PARK, LLC, PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, AND AMERICAN MANAGEMENT SERVICES CENTRAL, LLC recover their costs of this appeal from appellant PENG WANG, CHONG ZHANG AND MENGQI (NINA) LIU.

Judgment entered October 24, 2022.