

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00128-CV

———————————————

IN RE TARANTINO PROPERTIES, INC., Relator

---

Original Proceeding
348th District Court of Tarrant County, Texas
Trial Court No. 348-348934-23

---

AND

_____

No. 02-25-00134-CV

_____


IN RE THE ASPEN EQUITY PARTNERS, LP D/B/A
THE ASPEN APARTMENTS, Relator


---

Original Proceeding
348th District Court of Tarrant County, Texas
Trial Court No. 348-348934-23

---

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In this memorandum opinion, we address two separately filed original proceedings complaining about the same discovery order. Relator The Aspen Equity Partners LP d/b/a The Aspen Apartments (the property owner) and Relator Tarantino Properties, Inc. (the former property manager of the Aspen Apartments), which are the defendants in the underlying premises liability suit, have each challenged both the merits and the scope of the trial court's order compelling net-worth discovery from them. Because the trial court's order is not sufficiently narrowly tailored and thus exceeds the scope of permissible discovery, we hold that the trial court abused its discretion, and we conditionally grant relief.

## II. BACKGROUND

The underlying suit arose from a drive-by shooting that purportedly was the culmination of a dispute over rap videos. *See In re J.S.*, No. 02-23-00465-CV, 2024 WL 976526, at *3–5 (Tex. App—Fort Worth Mar. 7, 2024, no pet.) (mem. op.). During the early morning hours of July 28, 2023, four men—at least one of whom was a juvenile—went to the Aspen Apartments to shoot the mother of one of the persons with whom they were having the dispute. *Id.*[1] But they misidentified the

---

[1]*J.S.* is the product of the juvenile proceeding that followed the shooting. The real party in interest disputes whether the trial court could properly rely on records stemming from that proceeding. Because we decide relators' petitions based on deficiencies in the trial court's order, we do not reach that issue. For our purposes,

3

apartment in which their intended victim lived and instead mistakenly shot into the apartment of Ora Griffin, killing her. *Id.* at *5.

Ora's daughter, Winnette Griffin (Griffin), individually and as the administrator of Ora's estate, then sued Aspen and Tarantino. In her live pleading, she asserted—among other claims—premises liability, negligence, and gross negligence, for which she sought exemplary damages. Griffin alleged that Aspen and Tarantino knew or had reason to know "of frequent violent criminal activity occurring in close proximity to" the apartments "and on its premises."[2] Specifically, she alleged that, at the time of Ora's death, "the drive-through entry gate was broken and/or was left wide open and was not monitored, the walk-in entry gates were propped open, there were no security guards or courtesy officers on the premises, the property was dimly lit, and there were no exterior security cameras throughout the premises." According to Griffin, the shooting was foreseeable because of Aspen's and Tarantino's knowledge of the violent crime on or near the premises and could have been prevented if they "had taken reasonable and prudent steps to prevent or deter the occurrence of criminal acts on the premises," such as "prevent[ing] unauthorized persons from accessing the

_____

*J.S.* summarizes the subject matter of the real party in interest's suit against Aspen and Tarantino.

[2]Property owners generally have no legal duty to protect persons from third-party criminal acts. *UDR Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98, 100 (Tex. 2017). But property owners who control the premises do have a duty to use ordinary care to protect invitees from criminal acts of third parties if they know or have reason to know of an unreasonable and foreseeable risk of harm to the invitee. *Id.*

4

property" and "hav[ing] an adequate security presence and security mechanisms to prevent persons from committing crime on the premises."[3]

In her gross-negligence claim, Griffin asserted that Aspen and Tarantino were subjectively aware of the extreme degree of risk that Ora would be a victim of a violent criminal act on the property but nevertheless acted "with conscious indifference to the rights, safety, and/or welfare of others." According to Griffin, "[t]he probability of injury was great . . . because [Aspen and Tarantino] could have eliminated the risk of harm to [Ora] and others by making reasonably prudent and necessary safety modifications to the premises and/or removing known threats of violence and/or reasonably intervening to stop ongoing violence and/or criminal activity." Additionally, she pleaded that "[t]he burden on [Aspen and Tarantino] to

---

[3]In her petition, Griffin drew no distinction between Aspen and Tarantino: "At all times relevant to this litigation, [Aspen and Tarantino] managed, operated, controlled[,] and/or owned the property known as 'The Aspen Apartments' . . . . [Aspen and Tarantino] both retained and exercised control over the safety and security of the premises." Tarantino, however, argued that its position was distinguishable from Aspen's. *See generally United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 479 (Tex. 2017) (noting that in determining whether a duty exists for premises-liability purposes, the court must focus on the party's right to control the premises, rather than whether the party had actual control); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) (noting same). In its response, Tarantino mentioned—but did not expressly rely on—its assertion that it had "never assumed control of security" at the apartments because of a provision in its January 1, 2022 Management Agreement with Aspen that provided Tarantino could make recommendations to Aspen only if Tarantino thought the premises "needed expenditures relating to . . . serious security and safety measures" and that Aspen had agreed to indemnify Tarantino if it were sued because Aspen did not timely approve or make "security/safety-related expenditures" recommended by Tarantino. Tarantino argued this provision as a defense to net-worth discovery at the later hearing on the motion.

eliminate the risk was therefore extremely slight as compared to the likelihood of grave injury or death to invitees like [Ora]."

For purposes of her gross-negligence claim, Griffin moved to have the trial court authorize net-worth discovery from both Aspen and Tarantino. Griffin amended her motion at least once and served the amended motion on January 16, 2025. Griffin attached ten exhibits to her motion, including business records from the Fort Worth Police Department detailing crime reports at or near the apartments and excerpts from depositions of current and former Aspen Apartments tenants and a former Tarantino employee. She also attached an affidavit from her testifying expert, who averred that—based on the evidence that he had reviewed, including criminal-activity statistics for the Aspen Apartments' immediate vicinity—"[i]t is simply inconceivable that the owner/management of the Aspen Apartments were unaware of the serious crime problems and dangerous conditions on and proximate to the premises." He also opined that (1) "[a] primary determinant of criminal opportunity is the extent to which a property owner or manager implements situational crime prevention strategies"; (2) "situational crime prevention strategi[]es serve to reduce criminal opportunity, which in turn reduces the probability of crime"; and (3) "[t]he multiple security failures at the Aspen Apartments [detailed in his affidavit and including a lack of access control] clearly and substantially increased the foreseeability of the murder of Ora."

Aspen and Tarantino filed responses to Griffin's request for net-worth discovery, each alleging that Griffin had failed to show a substantial likelihood of success on the merits of her claim for exemplary damages. Both argued that Griffin had provided insufficient evidence of her underlying premises-liability claim and thus could not, by law, recover damages for gross negligence. Additionally, both contended that Texas Civil Practice and Remedies Code Section 41.005(a) bars their liability for gross negligence and that none of Section 41.005(b)'s enumerated exceptions—particularly the exception for maintaining a common nuisance—apply. Tex. Civ. Prac. & Rem. Code Ann. § 41.005(a) (providing that, in a suit "arising from harm resulting from an assault, theft, or other criminal act," court may not award exemplary damages "because of the criminal act of another"), (b) (listing exemptions to subsection (a)'s bar, including that the criminal act occurred "at a location where, at the time of the criminal act, the defendant was maintaining a common nuisance under the provisions of Chapter 125, Civil Practice and Remedies Code, and had not made reasonable attempts to abate the nuisance").[4]

Aspen and Tarantino also attached evidence to their respective responses. Tarantino included an affidavit from its safety-and-security expert, as well as a report prepared by that expert. In the expert's report, he disputed Griffin's experts' opinions and opined (1) that, at the time of the shooting, the Aspen Apartments complex "was

---

[4]We note that the applicability of Section 41.005 to a suit may be the subject of a motion for summary judgment. *See generally Durham v. Zarcades*, 270 S.W.3d 708, 710 (Tex. App.—Fort Worth 2008, no pet.).

[being] operated in a manner consistent with common and reasonably accepted practices of lodging security"; (2) that Ora's "premeditated, deliberate, and targeted murder . . . was a singular and isolated incident in no way foreseeable and, as such, was beyond the responsibility of Tarantino . . . to have reasonably anticipated, predicted, or mitigated"; and (3) that none of the preventative security measures that Griffin alleged would have helped prevent the drive-by shooting or "would or could have prevented the deliberate and targeted murder of [Ora]."

The trial court conducted a hearing on Griffin's motion. After the hearing, the trial court signed an order in which it found that Griffin had shown a substantial likelihood that she would prevail on her claim for exemplary damages and authorized Griffin to "conduct net[-]worth discovery on [Aspen and Tarantino] via the least burdensome method, as articulated in [Griffin's] Motion."

Griffin propounded net-worth discovery on the same day that the trial court signed the order authorizing it. Her discovery requests deviated from the requests in her motion. Instead of responding to the propounded discovery, Aspen and Tarantino filed their separate petitions for writ of mandamus in this court. Although Tarantino did not seek a temporary stay of the trial court's order, Aspen did; accordingly, we stayed the order in its entirety.

8

## III. Discussion

### A. Standard of Review

Mandamus relief is an extraordinary remedy. *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding). The party seeking mandamus relief must show both that the trial court clearly abused its discretion and that the party has no adequate remedy by appeal. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (orig. proceeding); *see In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding) (involving mandamus challenge to discovery order). A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles. *Allstate Indem. Co.*, 622 S.W.3d at 875; *see Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

In determining whether the trial court abused its discretion, we may not substitute our judgment for the trial court's determination of factual or other discretionary matters. *State Farm Lloyds*, 520 S.W.3d at 604. But because a trial court has no discretion in determining what the law is or in applying the law to even unsettled facts, we review its decisions on questions of law and application-of-law-to-facts questions much less deferentially. *Id.* A trial court abuses its discretion by clearly failing to correctly analyze or apply the law. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding).

Trial courts have broad discretion to decide whether to permit or deny discovery. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247 (Tex. 2021) (orig.

9

proceeding); *State Farm Lloyds*, 520 S.W.3d at 604. "However, '[m]andamus relief is available when the trial court compels production beyond the permissible bounds of discovery.'" *In re Bella Corp.*, 648 S.W.3d 373, 377 (Tex. App.—Tyler 2021, orig. proceeding [mand. denied]) (quoting *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding), in context of reviewing net-worth discovery order).

## B. Applicable Law

Unlike in other contexts, in which parties generally may engage in discovery without the need for court intervention, net-worth discovery requires a written court order before any discovery may take place. *See In re Juniper Ventures of Tex., LLC*, 679 S.W.3d 177, 180 (Tex. App.—San Antonio 2023, orig. proceeding) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.0115(a)). According to Section 41.0115 of the Texas Civil Practice and Remedies Code, a trial court may permit net-worth discovery if (1) the claimant files a motion seeking such discovery and (2) the trial court finds—"after notice and a hearing"—that the claimant has shown a substantial likelihood of success on the merits of its claim for exemplary damages.[5] Tex. Civ. Prac. & Rem. Code Ann. § 41.0115(a). "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Juniper Ventures of Tex., LLC*, 679 S.W.3d at 181 (quoting *Bella Corp.*, 648 S.W.3d at 378); *see In re Kimco Devs.*,

---

[5]"[E]xemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a).

No. 14-24-00361-CV, 2024 WL 5250445, at *3 (Tex. App.—Houston [14th Dist.] Dec. 31, 2024, orig. proceeding) (per curiam) (mem. op.).

An order allowing net-worth discovery "may only authorize use of the least burdensome method available to obtain the net[-]worth evidence." Tex. Civ. Prac. & Rem. Code Ann. § 41.0115(b). Generally, only a party's net worth at the time of responding to the discovery is relevant. *See In re Berridge Mfg. Co.*, No. 04-20-00462-CV, 2020 WL 7365455, at *2 (Tex. App.—San Antonio Dec. 16, 2020, orig. proceeding [mand. denied]) (mem. op.) (reviewing scope of net-worth discovery in employment-injury case); *In re Potashnik*, No. 05-19-01188-CV, 2020 WL 1933796, at *2 (Tex. App.—Dallas Apr. 22, 2020, orig. proceeding [mand. denied]) (mem. op.) (considering availability of net-worth discovery in supersedeas-bond context); *In re Jacobs*, 300 S.W.3d 35, 44–45 & n.9 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding [mand. dism'd]) (considering scope of ordered net-worth discovery in medical-negligence case and explaining also that net-worth discovery should be supplemented if any material change occurs between time of discovery response and trial). Accordingly, discovery of financial records is generally restricted to the immediately preceding twelve-month period. *See Jacobs*, 300 S.W.3d at 44–45 (holding that requests for two prior years' worth of financial information was overly broad); *see also In re Arnold*, No. 13-12-00619-CV, 2012 WL 6085320, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 30, 2012, orig. proceeding [mand. dism'd]) (mem. op.) (holding that requests for balance sheets older than immediately preceding year were

11

overly broad); *In re Ameriplan Corp.*, No. 05-09-01407-CV, 2010 WL 22825, at *1 (Tex. App.—Dallas Jan. 6, 2010, orig. proceeding) (mem. op. nunc pro tunc) (same); *In re House of Yahweh*, 266 S.W.3d 668, 673 (Tex. App.—Eastland 2008, orig. proceeding) (same). *But cf. In re XTC Cabaret (Dall.), Inc.*, No. 05-21-00794-CV, 2022 WL 152658, at *1 (Tex. App.—Dallas Jan. 18, 2022, orig. proceeding [mand. denied]) (mem. op.) (holding, in premises-liability case, that evidence of owner's gross income for the two years prior to the assault on the premises—although not relevant to net worth for exemplary-damages purposes—was nevertheless discoverable regarding "the reasonableness of placing the [financial] burden [to take reasonable care to reduce or eliminate risk] on relator rather than the taxpayers at large").

## C. Analysis

In Tarantino's fourth issue and Aspen's second issue, they contend that the trial court erred by ordering net-worth discovery that is neither current nor limited to the least burdensome method. We agree.[6]

---

[6]Griffin argues that Aspen and Tarantino failed to preserve their complaint about the scope of the order by not objecting to it in the trial court. *See In re J.H.*, No. 02-22-00457-CV, 2023 WL 310187, at *3 (Tex. App.—Fort Worth Jan. 19, 2023, orig. proceeding) (mem. op.) (noting that error-preservation rules apply to original proceedings and that mandamus relief generally requires a predicate request for, and refusal of, some action). Here, the full import of this complaint did not become clear until Griffin propounded her discovery that failed to comport with her motion, illuminating the flaw in the trial court's order. And the trial court had already held a hearing at which Aspen and Tarantino had opposed any net-worth discovery. We hold that, on these particular facts, an objection was not necessary because our limited holding will allow the trial court to reconsider this aspect of its order—just as it would were we to deny relief for lack of preservation. *See In re J & GK Props. – CKJ N. Tex.*

12

Here, the trial court's order does not specifically describe any limitation, much less a "least burdensome" one, for the net-worth discovery. It simply refers to Griffin's motion to establish the discovery parameters: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Amended Motion is GRANTED[,] and Plaintiff may conduct net[-]worth discovery on Defendants via the least burdensome method, as articulated in Plaintiff's Motion." But the scope of net-worth discovery articulated in Griffin's motion is not clear.

Griffin twice requested only balance sheets and fiscal year-end income statements for 2019 through 2023:

- "According to the[] statutory limitations on net[-]worth discovery, [Griffin] merely seeks an order from the [c]ourt permitting discovery of [Aspen's and Tarantino's] balance sheets, showing the balance of income and expenditures, and fiscal year-end income statements for 2019–2023 to demonstrate their net worth."

- Griffin "respectfully requests that the [c]ourt enter an order permitting discovery into [Aspen's and Tarantino's] net worth, limited to the balance sheets and fiscal year-end income statements for 2019–2023."

---

*Series LLC*, No. 03-23-00426-CV, 2023 WL 5597361, at *1 (Tex. App.—Austin Aug. 29, 2023, orig. proceeding) (mem. op.); *see also In re Perritt*, 992 S.W.2d 444, 446 (Tex. 1999) (orig. proceeding) (noting that predicate-request requirement has been relaxed in those rare occasions when it would have been futile and little more than a formality). The same holds for other matters not raised in the trial court. For example, although only Tarantino argued at trial that Griffin waived a premises-liability complaint in her lease, Aspen has argued the same in this court. *See, e.g.*, *Zachry Constr. Corp. v. Port of Hous. Auth.*, 449 S.W.3d 98, 116 (Tex. 2014); *Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 508–09 (Tex. 1993); *Riley v. Bank of NY Mellon*, No. 09-23-00085-CV, 2025 WL 919925, at *7–8 (Tex. App.—Beaumont Mar. 27, 2025, no pet.); *Hill v. Fitness Int'l, LLC*, No. 02-22-00142-CV, 2023 WL 2607646, at *7–13 (Tex. App.—Fort Worth Mar. 23, 2023, no pet.) (mem. op.).

But in another part of the motion, she appeared to broaden this request:

- "[T]his [c]ourt should compel [Aspen and Tarantino] to produce information pertaining to their net worth, including production of their balance sheets and fiscal year-end income statements from 2019 through 2023."

*See Stonegate Fin. Corp. v. Broughton Maint. Ass'n, Inc.*, No. 02-18-00091-CV, 2019 WL 3436616, at *5 (Tex. App.—Fort Worth July 30, 2019, no pet.) (mem. op.) ("As a straightforward definitional matter, *including* does not mean *only* or *limited to*—a fact self-evident from lawyers' ubiquitous use of the phrase *including but not limited to* when (for example) propounding document requests.").

Even if the trial court's order could be read as referring only to Griffin's more limited request for balance sheets and fiscal year-end income statements for 2019 through 2023, Griffin never explained why she sought financial information for those years in particular or why she needed five years' worth of information. Accordingly, she never indicated why the documents she sought were relevant to Aspen's and Tarantino's net worth in early 2025. In short, nothing in the trial court's order referring to the "least burdensome method, as articulated in Plaintiff's Motion" sheds light on the specific parameters of discovery that Griffin was authorized to seek.

This lack of precise limitation is evident from a review of the discovery actually propounded. When Griffin served interrogatories and requests for production on February 20, 2025, she did not limit her request to balance sheets and fiscal year-end income statements from 2019 through 2023. Instead, in her interrogatories, she asked

14

for Aspen's and Tarantino's (1) "*current* net worth by listing [their] assets and liabilit[ies] and resulting difference in same" and (2) their "net worth as of the end of fiscal year 2023 by listing [their] assets and liabilit[ies] and resulting difference in same." [Emphasis added.] In her requests for production, she asked for information from 2021 forward:

- "all documents[7] which demonstrate [Aspen's and Tarantino's] net worth as of the end of fiscal year 2023";

- "all documents which demonstrate [Aspen's and Tarantino's] net worth as of the date of th[e] response";

- "all financial statements . . . reflecting [Aspen's and Tarantino's] assets and/or liabilities prepared from January 1, 2021[8] to present";

- "all fiscal year-end income statements for [Aspen and Tarantino] from January 1, 2021 through the present time"; and

- "all fiscal year-end balance sheets for [Aspen and Tarantino] from January 1, 2021 through the present time."

Here, the trial court granted net-worth discovery, and to do so, it had to "authorize use of the least burdensome method available to obtain the net[-]worth evidence." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.0115(b); *see also In re HW&B Enters., LLC*, No. 13-24-00463-CV, 2024 WL 4958268, at *4 (Tex. App.—Corpus

---

[7]The definition of "Documents" in the requests for production is broad and comprehensive, spanning two pages. Moreover, the definition is not limited to items generated within any particular time period.

[8]The requests for production directed to Tarantino requested "financial statements" only "from January 1, 2022 to present."

Christi–Edinburg Dec. 3, 2024, orig. proceeding) (mem. op.) (stating that order failed to comply with Section 41.0115(b)). The trial court's order does not do that. Instead, it effectively delegated the scope of the discovery to Griffin.

We conclude that the trial court's order does not comport with Section 41.0015(b). Thus, we sustain Tarantino's fourth issue and Aspen's second issue.

## IV. CONCLUSION

We conditionally grant Aspen's and Tarantino's petitions for writ of mandamus and instruct the trial court to vacate its order granting Griffin's amended motion to conduct net-worth discovery.[9] Our writ will issue only if the trial court does not comply.

/s/ Dana Womack

Dana Womack
Justice

Delivered: July 18, 2025

---

[9]So that the trial court may comply with our order and judgment, we lift our March 25, 2025 stay order.