COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| SUDZ LOUNGE 2 and<br>JONATHAN L. CRAWFORD, | § | No. 08-23-00215-CV |
| | § | |
| Appellants, | | Appeal from the |
| | § | |
| v. | | 120th District Court |
| | § | |
| SERGIO ARTURO MARTINEZ and | | of El Paso County, Texas |
| RAUL FERNANDEZ, | § | |
| | | No. 2020DCV1302 |
| Appellees. | § | |

## MEMORANDUM OPINION

This case arises from a shooting of two bar patrons. Although Appellees Sergio Arturo Martinez and Raul Fernandez survived the incident, they sustained several gunshot wounds and resulting harm. Seeking personal injury damages, Appellees filed suit not only against the shooter, Daniel Frausto, but also against Appellants, Sudz Lounge 2, the bar where the patrons had spent a part of their evening, and Jonathan L. Crawford, an owner of the bar. A jury found in favor of Martinez and Fernandez and against all three defendants, it assigned a percentage of responsibility to each defendant, and it awarded specified damages to Appellees. Only Appellants Sudz and Crawford challenge the judgment on appeal. Principally, they contend the evidence was not legally sufficient to support a finding that Frausto's criminal conduct was foreseeable as to establish a

legal duty for them to protect Martinez and Fernandez from the criminal acts of Frausto on the night in question. In short, Appellants, Sudz and Crawford, contend the evidence was legally or factually insufficient to support the jury's finding that either of them proximately caused Martinez's and Fernandez's respective injuries. On the record presented, we conclude we must reverse and render a take-nothing judgment in favor of Sudz and Crawford.

## I. BACKGROUND

In the early morning hours of October 11, 2019, Appellees were leaving Sudz Lounge 2 shortly after it closed. While they remained in the parking lot, Appellees were shot multiple times. Each sustained life-threatening injuries. The shooter, Daniel Frausto, also spent time at Sudz that evening. Appellees sued Appellants for negligence and premises liability, alleging their injuries were caused by a dangerous condition on the premises that Appellants actually knew or should have known existed. They also sued Frausto for intentional infliction of emotional distress, assault, and battery.

The case proceeded to a jury trial where the following six witnesses testified: (1) Crawford, (2) Toni Hinojos, a bartender on duty that night, (3) Aaron Arambula, the bouncer on duty that night, (4) Fernandez, (5) Martinez, and (6) Martinez's wife. Other evidence was presented as well, to include admission of medical records, police reports, and surveillance videos of the bar from the night in question. The different testimonies included a timeline of events on the night of October 10, 2019, leading into the early morning hours of October 11, 2019. A significant portion of the evidence focused on Frausto being permitted to enter and patronize the bar though he had not yet attained the legal age for drinking. The surveillance videos recorded the interior of the bar throughout the night in question, and also presented a limited angle of the exterior of the bar, mostly depicting a patio and at least one departing vehicle. The jury returned a verdict in favor of

2

Appellees, finding Sudz 10% liable, Crawford 10% liable, and Frausto 80% liable. The trial court issued a judgment awarding Martinez $224,391.48 in damages and Fernandez $591,846.54 in damages. Sudz and Crawford pursued this appeal; but Frausto is not a party to this proceeding.

## II. STANDARD OF REVIEW

Appellants challenge the legal sufficiency [1] of the evidence supporting the adverse judgment on Appellees' respective premises liability claims. When addressing a challenge to the legal sufficiency of the evidence to support the jury's findings, we review the entire record, credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005).

We sustain a legal sufficiency challenge if the record demonstrates (1) the complete absence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* at 813 (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

We may not substitute our judgment for that of the fact-finder so long as the evidence falls within a zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822; *City of El Paso v. Ramirez*, 633 S.W.3d 246, 253 (Tex. App.—El Paso 2021, pet. denied). We remain mindful that

---

[1] Appellants also challenge the factual sufficiency of the evidence to support the jury's verdict. Appellants did not file a motion for new trial on the sufficiency of the evidence to support the jury's verdict. Tex. R. Civ. P. 324(b)(2) (requiring a motion for new trial to be filed in order to preserve error on a complaint of factual insufficiency of the evidence to support a jury finding); *In re D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021) (noting that preservation of a factual-sufficiency challenge requires a motion for new trial). Accordingly, Appellants failed to preserve their factual sufficiency challenge for appellate review, and we only review legal sufficiency.

the fact-finder is "the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Region XIX Serv. Ctr. v. Banda*, 343 S.W.3d 480, 489 (Tex. App.—El Paso 2011, pet. denied) (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761–62 (Tex. 2003)).

## III. PREMISES LIABILITY

In their second issue, Appellants assert the evidence presented at trial was legally insufficient to support a finding of negligence because the evidence failed to show that it breached any duty to Appellees or that their injuries were proximately caused by any action by Appellants because Frausto's criminal conduct was not foreseeable. Responding, Appellees assert the prior incidents at Sudz, the nature and character of the premises, and the intoxication of Frausto together amounted to legally sufficient evidence for the jury to conclude Frausto's conduct was a reasonably foreseeable result of Sudz allowing Frausto to drink while underage.

### A. Applicable law

In a premises liability case, plaintiffs must establish a duty owed to them, breach of the duty, and damages proximately caused by the breach. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010). "Whether a duty exists is a question of law for the court and turns on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant." *Del Lago Partners, Inc.*, 307 S.W.3d at 767 (internal quotation marks omitted). "Generally, property owners have no legal duty to protect persons from third-party criminal acts." *UDR Texas Props., L.P. v. Petrie*, 517 S.W.3d 98, 100 (Tex. 2017). "But a property owner who controls the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Id.* (internal quotation marks omitted).

4

The Texas Supreme Court has created two analytical frameworks to determine whether property owners have a duty to protect against third parties' criminal acts against invitees. First, when there is evidence of past criminal conduct, at or near the premises, courts examine the following factors to determine whether similar, future conduct was reasonably foreseeable:

> (1) proximity—whether any criminal conduct previously occurred on or near the property; (2) recency—how recently such conduct occurred; (3) frequency—how often such conduct occurred; (4) similarity—how similar the prior conduct was to the conduct that occurred on the property; and (5) publicity—whether any publicity surrounded the occurrences to indicate that the property owner knew or should have known about them.

*Wang v. Trea Churchill on the Park, LLC*, No. 05-21-00880-CV, 2022 WL 13811953, at *3 (Tex. App.—Dallas Oct. 24, 2022, pet. denied) (mem. op.) (citing *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 757 (Tex. 1998)). These *Timberwalk* factors only "guide courts in situations where the premises owner has no direct knowledge that criminal conduct is imminent, but the owner may nevertheless have a duty to protect invitees because past criminal conduct made similar conduct in the future foreseeable." *Del Lago Partners, Inc.*, 307 S.W.3d at 768.

As a second analytical framework, *Del Lago Partners, Inc.,* determined that the nature and character of the premises can also be a factor making criminal activity more foreseeable. *Id*. In short, criminal misconduct is sometimes foreseeable because of "immediately preceding conduct." *Id.* at 769. In *Del Lago*, security guards removed an unruly patron from a resort bar during a fraternity reunion. *Id.* at 765. On the following night, the fraternity reunion continued in the same bar. *Id.* For at least an hour and a half, there were verbal and physical exchanges at the bar between the fraternity group and an unrelated group connected to a wedding. *Id.* at 769. The bar continued to serve the groups as they continued to "engage[] in repeated and aggressive confrontations." *Id.*

5

Eventually, the bar staff attempted to close the bar "pushing the hostile parties out of the bar through the exit, prompting a free-for-all." *Id.* at 766. It became a "madhouse," with "pushing, shoving, kicking, and punching[,]" and different items being thrown. *Id.* The plaintiff suffered severe injuries including a skull fracture and brain damage when he was placed in a headlock and "[m]omentum carried [him] and his attacker into a wall, where [his] face hit a stud." *Id.* The Supreme Court concluded that Del Lago had a duty to protect its patrons because it "had actual and direct knowledge that a violent brawl was imminent between drunk, belligerent patrons, and had ample time and means to defuse the situation." *Id.* at 769. Because the brawl outside the bar was of the same character, though more severe, the Court found it had been foretold by the verbal and physical confrontations that occurred earlier, and the resulting harm to plaintiff was a natural and predictable progression from the conduct that preceded it. *Id.*

## B. Analysis

Under the *Timberwalk* analysis, Appellees argue they presented evidence at trial of past criminal conduct at the bar. They maintain the evidence established the area of the city where the bar is located was "dangerous," that Arambula, the bar's designated bouncer, had seen "altercations" before, and he had conducted "pat downs" on patrons for security reasons. Arambula, however, did not elaborate on the nature or character of any criminal incidents he had witnessed. Even if the jury believed there were prior altercations in the bar before, there was no evidence of when the prior incidents occurred, how often they occurred, whether the specific incidents were of the same nature as a shooting, or whether there was any publicity surrounding

6

the incidents. *Timberwalk*, 972 S.W.2d at 759. Accordingly, there was no evidence that Appellants owed Appellees a duty under the *Timberwalk* analysis.[2] *Id.*

Under a *Del Lago* analysis, Appellees were required to show Appellants exercised control of the premises and there existed evidence of "immediately preceding" criminal conduct that gave rise to a legal duty to protect against a similar incident. *Del Lago Partners, Inc.*, 307 S.W.3d at 768–69. Appellees contend the jury could have found that the shooting was foreseeable due to the intoxicated status of an underage Frausto and an inferred hostility between him and other patrons.

At trial, however, Sudz's bouncer Arambula and bartender Hinojos testified they never saw any hostile interactions between Appellees or Frausto. In fact, the only encounter Arambula witnessed between the relevant parties occurred when he walked with Appellees out of the bar at closing time and he heard Appellees and Frausto interacting with each other. He heard Fernandez asking Frausto if there was going to be an after party. Frausto responded by asking whether Fernandez and Martinez had any beer. Arambula characterized the interaction as a friendly conversation. Arambula then returned to the interior of the bar to complete his shift. After locking the door behind him, he joined the bartenders in cleaning up.

The jury also heard testimony from Appellees. Fernandez initially testified he remembered there being a "big commotion" at the bar that night involving "a man pushing the people aside." He described that he saw somebody across the bar pushing people and he became concerned about an older gentleman who was nearby. After that incident, he next remembered an ambulance being

---

[2] In their first issue on appeal, Appellants claim the trial court erred in denying their no-evidence motion for summary judgment because Appellees did not establish that the shooting incident was foreseeable. Both parties heavily reviewed the summary judgment arguments and evidence in their appellate briefs. Where a motion for summary judgment is denied by the trial court and later tried on its merits, the order denying the motion for summary judgment is not reviewable on appeal. *See Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Educap, Inc. v. Mendoza*, No. 03-18-00686-CV, 2019 WL 4727071, at *2 (Tex. App.—Austin Sept. 27, 2019, no pet.). Accordingly, we do not address the first issue, or the evidence presented on summary judgment. Instead, we review the second issue challenging the legal sufficiency of the evidence that was admitted during trial in support of the jury's verdict.

7

present and he was trying to breathe. He experienced pain, confusion, then darkness. When cross-examined, he was asked whether an argument ensued inside the bar. Fernandez answered, "I don't remember leaving the bar, I don't remember fighting. I just remember him coming towards us. That's it."

Martinez testified that he did not have any interactions with Frausto. But he did remember Fernandez telling him that "[Frausto] was starting a fight with him" while he gestured in Frausto's direction.[3] Fernandez did not remember what happened once they left the bar but only remembered Frausto "coming towards [them]." Martinez recalled the point when he left the bar and walked with friends to their car. At that point, Fernandez and Frausto began "arguing" and Martinez saw Fernandez slap Frausto. He testified that as he tried to "diffuse" the situation, Frausto shot Fernandez. When they all turned to run, Frausto shot and hit Fernandez three more times and Martinez was hit three times, as well.

In addition to the testimony heard at trial, the jury also viewed hours of surveillance videos that showed the inside of the bar and the outside patio area. The videos show the first interaction between Frausto and Fernandez occurs at approximately 1:18 a.m. Inside the bar, Frausto is seen talking to a group of people and Fernandez comes over to the group and starts dancing. One of the group members starts dancing with Fernandez as the other group members laugh. Frausto then turns to leave into the outdoor patio area of the bar. A few minutes later Fernandez goes out into the patio area. While in the patio area, Fernandez talks to two men while smoking a cigarette and Frausto talks to two different men. The two groups later come together, all talking in one group. Frausto then returns to the bar's interior, followed shortly thereafter by Fernandez. Frausto stands

---

[3] In a police report, Martinez told officers that Fernandez and Frausto were "talking sh-t" to each other inside the bar but that he did "not think much of it."

on one side of the room with his group and Fernandez rejoins Martinez at the bar. At approximately 1:36 a.m., Fernandez walks over to what appears to be a restroom.[4] Frausto walks to the restroom shortly after. About a minute later, both exit the restroom at the same time and return to their respective groups. Fernandez tells Martinez something and points in Frausto's direction. Besides these interactions, the rest of the surveillance video shows Frausto drinking with his group, playing pool, talking to the DJ, and walking around the room. Fernandez can be seen dancing, laughing, talking, and hugging different people.

Although Appellees argue that the shooting would not have occurred had Sudz not allowed an underage Frausto into the bar and served him alcohol, there was no evidence that the shooting was a foreseeable consequence of underage drinking. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) ("Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury."); *see also Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 470 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("[F]oreseeability requires more than 'afford[ing] an opportunity' to commit a crime.").

Additionally, Appellees contend that the jury could have made reasonable inferences from the surveillance videos that Fernandez was uncomfortable around Frausto and that their body expressions and gesturing amounted to displays of aggression. We disagree. Even if we credit these inferences, instances of being uncomfortable and pointing "aggressively" are not analogous to the type of conduct addressed in *Del Lago*. Moreover, even if we assume aggressive words were exchanged at some point in the bar between Frausto and Fernandez, there remains an absence of evidence from which it can be said that Appellants knew or should have known that a violent

---

[4] The parties' briefing similarly describe the area in question as leading to restrooms.

outbreak was imminent. *See Del Lago Partners, Inc.*, 307 S.W.3d at 769. On this record, there was no evidence that Appellants had a means or opportunity to diffuse any violent outbreak that imminently led to a shooting outside the bar. *Id.* For this reason, there is no evidence to support a finding under *Del Lago Partners, Inc.,* that there was an "immediately preceding" criminal act prior to the actionable claim. *See ALNA Properties II, LLC v. Cobb*, No. 05-22-00166-CV, 2023 WL 5740182, at \*5 (Tex. App.—Dallas Sept. 1, 2023, pet. denied) (mem. op.) (reversing judgment on premises liability because there was no evidence of similar misconduct "immediately preceding" the act of a shooting outside of a home even though there was an ongoing feud between the two months prior to the shooting); *QuikTrip Corp. v. Goodwin*, 449 S.W.3d 665, 673 (Tex. App.—Fort Worth 2014, pet. denied) (holding assailant's profane actions and descriptions of past illicit activity while inside the QuickTrip store was not immediately preceding behavior and was not a natural and predictable progression to the conduct of abduction, rape, and murder); *Doe v. Messina*, 349 S.W.3d 797, 803 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding that "[a]lthough allowing the teenagers to consume alcohol without adult supervision might have [] various foreseeable consequences" sexual assault was not a foreseeable consequence of unsupervised teenage drinking without any evidence of prior similar incidents or that the sexual assault was imminent that night). Applying *Timberwalk* and *Del Lago*, we must ultimately conclude that the risk of Frausto's criminal conduct as inflicted upon Martinez and Fernandez was unforeseeable to Sudz and Crawford on the night in question. Thus, based on the totality of the evidence presented at trial, neither Sudz nor Crawford had a duty to protect Martinez or Fernandez from Frausto's criminal acts against them as a matter of law.

We sustain Appellants' second issue.

## IV. CONCLUSION

We reverse the trial court's judgment and render judgment that Martinez and Fernandez take nothing on their respective claims against Sudz Lounge 2 and Jonathan L. Crawford.

GINA M. PALAFOX, Justice

November 19, 2024

Before Alley, C.J., Palafox and Soto, JJ.